October 24th, 2025

**FILED**

**10/27/2025**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

**EARL JAMES GOBIN**
**PLAINTIFF, PRO SE**
VS
**ELI LILLY AND COMPANY**
**DEFENDANT**

**CIVIL ACTION NO:**    1:25-cv-2209-MPB-TAB

**COMPLAINT FOR MEDICAL NEGLIGENCE, FAILURE TO WARN, STRICT LIABILITY, PRODUCT LIABILITY, BREACH OF CONTRACT, AND UNETHICAL CONDUCT IN CLINICAL TRIALS**

**TABLE OF CONTENTS:**

| SECTION | TITLE | PAGE |
|---------|-------|------|
| I | Opening Remarks & Preliminary Statement | 2 |
| II | Parties | 5 |
| III | Jurisdiction and Venue | 5 |
| IV | Factual Background (Part One & Two) | 5 |
| V | Legal and Regulatory Violations | 8 |
| VI | Systemic Pattern / Corporate Misconduct | 13 |
| VII | Causes of Action | 15 |
| VIII | Statement Of Claim | 16 |
| IX | Prayer for Relief & Conclusion | 18 |

Plaintiff, Earl James Gobin acting pro se, brings this Complaint against Defendant Eli Lilly and Company ("Defendant" or "Eli Lilly") and alleges as follows:

## I. OPENING REMARKS & PRELIMINARY STATEMENT

**OPENING REMARKS:**

At the outset, Plaintiff respectfully seeks an award of compensatory and punitive damages against Defendant - Eli Lilly and Company, totaling Five Million Dollars (USD - $5,000,000.00). This request for financial relief is based on clear, compelling, and convincing evidence, supported by indisputable material facts set for therein and presented to this honorable district court.

The Plaintiff, a sixty-nine-year-old (69) disabled senior citizen with multiple chronic medical conditions, participated in Eli Lilly's clinical trials in good faith and in full reliance upon the Defendant's solemn duty and representations of safety, oversight, and compliance with ethical research standards. Instead, the Plaintiff was subjected to an egregious pattern of negligence, concealment, and disregard for human welfare that caused severe and lasting physical and bodily harm to Plaintiff's vital organs.

The Plaintiff's most recent (August 25th, 2025) diagnosis of chronic pancreatitis (ICD-10 K86.1)—in addition to kidney stones, adrenal dysfunction, and other serious vital organ complications—was a direct consequence of the Defendant's reckless clinical conduct and failure to disclose known or foreseeable risks associated with their investigational drug, ORFORGLIPRON. These injuries have imposed both irreparable physical harm and emotional trauma, permanent medical complications, and the looming prospect of dependency on long-term care services as well as significantly reduced longevity for the Plaintiff.

Understandably, the Plaintiff's motivation in bringing this action is not personal gain but justice, accountability, and the preservation of dignity and financial security for his surviving family members —his spouse, two sons, and three grandchildren—before the inevitable ongoing challenges of aging or his sudden passing because of the bodily harm caused by ORFORGLIPRON.

The Plaintiff's participation in Eli Lilly's clinical research was motivated by Plaintiff's 100% trust in science and an earnest desire to contribute to medical advancement; however, that trust was quickly eroded and betrayed through unethical conduct and corporate indifference consistently perpetrated by the Defendant during the clinical trial.

This complaint therefore not only seeks compensatory and punitive damages but also aims to illuminate the systemic deficiencies in Eli Lilly's clinical trial current governance practice or lack thereof, as exemplified by both the ORFORGLIPRON and LEPODISIRAN (EZEF) studies - both of which, the Plaintiff was a willing participant and significant contributor. The Defendant's consistent pattern of misconduct—spanning these two trials—demonstrates a pervasive and abject failure to protect human subjects, particularly vulnerable participants such as the elderly and cognitively impaired. It is within this context that the Plaintiff respectfully invokes this honorable district court's equitable powers to ensure justice is served and jurisprudence best practices is invoked to deter future violations that endanger human life and dignity of the elder community across the nation.

<u>PRELIMINARY STATEMENT</u>

1. Plaintiff is a resident of Lilburn, Georgia. Plaintiff last date of employment was January 31st, 2022. Plaintiff was certified by the social security administration as "disabled" on January 28th, 2022.

2. Plaintiff Earl James Gobin ("Plaintiff"), age 69, is a retired and disabled senior citizen with multiple chronic conditions, including cardiovascular disease, insulin-dependent diabetes, hypertension, Transient Global Amnesia (TGA) and chronic pancreatitis (diagnosed on August 25th, 2025, by an established Gastroenterologist practicing in the state of Georgia - Dr Mahmoud Barrie).

3. From September 2024 through July 31, 2025, Plaintiff participated in two clinical trials sponsored by Defendant Eli Lilly and Company ("Defendant" or "Lilly"): 1) The ORFORGLIPRON trial (primary focus) and 2) The LEPODISIRAN trial (only referenced for overlap).

4.  Plaintiff completed the ORFORGLIPRON trial on July 31st, 2025, as scheduled but was abruptly removed from the five-year LEPODISIRAN study after only one year without any lawful justification.

5.  Defendant's actions constituted medical negligence, failure to warn, breach of contract, and unethical clinical trial practices that violated federal regulations (21 C.F.R. § 312.50) and industry ethical conduct standards.

6.  As a result, Plaintiff suffered severe and permanent bodily injuries including chronic pancreatitis, renal and adrenal dysfunction, organ calcification, cognitive decline, and emotional trauma during the ORFORGLIPRON clinical trial.

7.  On September 23, 2025, the Plaintiff contacted the Defendant's General Counsel, Madam Anat Hakim, to outline the Plaintiff's core complaints. The General Counsel then directed Madam Rebekah McEntire, Executive Director, Counsel – Litigation and Government, to engage with the Plaintiff. The Plaintiff then issued two formal demand letters, the first of which stipulated deadline was not met due to pending physician feedback. Exercising patience and in good faith, the Plaintiff issued a second letter with a deadline of October 23, 2025. Despite these diligent and reasonable efforts to resolve the matter without litigation, the Defendant in their wisdom elected not to settle amicably, leaving the Plaintiff with no alternative but to file this civil lawsuit. In my humble view, the Plaintiff acted in good faith and with the required patience, providing the Defendant with sufficient time and clear, convincing, and substantiated evidence of physical bodily harm, only to be met with indifference and unwarranted delays.

8. To confirm, over the past two months, Plaintiff has complied with all requests for information from the Defendant. In addition, Plaintiff proactively shared all the supporting clear, convincing evidence and material facts in support of the Plaintiff's core complaint to the Defendant.

## II. PARTIES:

6. **PLAINTIFF:** Earl James Gobin currently resides at 4386 Cedar Wood Dr SW, Lilburn, Georgia 30047.

7. **DEFENDANT:** Eli Lilly and Company, corporate headquarters at 893 893 S Delaware St, Indianapolis IN 46225 Lilly Corporate Center, Indianapolis, Indiana 46285.

## III. JURISDICTION AND VENUE:

8. This honorable district court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy far exceeds $75,000.

9. Venue is proper in the United States District Court for the Southern District of Indiana under 28 U.S.C. § 1391(b) because the Defendant, Eli Lilly and Company, is headquartered, operates within this District and maintains its principal place of business here. Although the clinical trial in which Plaintiff participated was conducted in the State of Georgia, the Defendant exercised full control over the trial's design, guidelines, protocols, and procedures. All material aspects of the trial were established, directed, and overseen by the Defendant from its headquarters in this District, and its acts and omissions substantially gave rise to the bodily injuries and physical harm complained of herein.

## IV. FACTUAL BACKGROUND - PART ONE:

## A. PLAINTIFF'S PRE-HEALTH CLINICAL TRIAL STATUS:

10. Prior to the clinical trial enrollment, Plaintiff's medical records showed stable pancreas, liver and kidney function, normal pancreatic and adrenal imaging, and no evidence of organ calcification or chronic digestive disease.

11. Plaintiff's conditions were well controlled under routine medical supervision for the five years as evidenced by the relevant reports from Plaintiff's personal physicians provided to the Defendant.

B. ENROLLMENT & PARTICIPATION:

12. Plaintiff enrolled in Eli Lilly's Phase III ORFORGLIPRON trial for treatment of metabolic dysfunction in September 2024.

13. Simultaneously, Plaintiff was enrolled in a second Eli Lilly trial for LEPODISIRAN (EZEF) under supervision of Emory Hospital in Georgia - a well-established (Top Ten) 'Hospital' across the nation.

C. ADVERSE EVENTS & INJURY PROGRESSION:

15. Within weeks of starting ORFORGLIPRON, Plaintiff experienced persistent abdominal pain, frequent diarrhea, weight loss ($\approx$ 15 lbs), and fatigue.

16. Despite timely reporting these symptoms to the Defendant's local clinical trial facilitator, Defendant failed to adjust protocols or implement medical intervention.

17. Laboratory tests later revealed the Plaintiff's lipase and amylase levels three times the upper normal limit, consistent with permanent pancreatic injury.

18. Subsequent CT imaging confirmed chronic pancreatitis (ICD-10: K86.1), renal calcifications, and adrenal abnormalities.

19. Plaintiff continues to suffer from pancreatic pain, digestive issues, and high risk of pancreatic fibrosis and pancreatic ductal adenocarcinoma (cancer of the pancreas).

D. <u>COGNITIVE & AGE-RELATED VULNERABILITY</u>

20. Plaintiff's diagnosis of Transient Global Amnesia (TGA) and advanced age required enhanced consent and monitoring procedures, which Defendant failed to provide.

<u>FACTUAL BACKGROUND - PART TWO</u>

<u>POTENTIAL ADVERSE IMPACT ON PLAINTIFF'S LONGETIVITY AND THE FUTURE FINANCIAL SERCURITY AND DIGNITY OF HIS FAMILY - SPOUSE, TWO SONS AND THREE GRANDCHILDREN:</u>

Plaintiff's current diagnosis of chronic pancreatitis, a condition known within the medical and scientific communities to carry a substantially increased risk of developing into pancreatic cancer, presents a foreseeable and life-threatening consequence of Defendant Eli Lilly's actions and omissions. Pancreatic cancer is among the deadliest malignancies, characterized by late-stage diagnosis, extreme physical pain, and a high mortality rate (90%) within a five-year timeframe.

Defendant, as a Global pharmaceutical manufacturer, had a duty of care to adequately research, disclose, and warn of the risks associated with its product(s), including the potential for long-term, irreversible harm such as chronic pancreatitis and its progression to cancer. Defendant's failure to warn, negligent conduct, and disregard for known medical risks have subjected Plaintiff to an ongoing, medically supported fear of a terminal illness (Exhibit A). This foreseeable, avoidable, and deeply distressing consequence constitutes a significant and actionable harm under applicable product & strict liability as well as negligence principles.

---

<u>PLAINTIFF'S MAJOR CONCERN: "FIBROSIS" - THE BRIDGE THAT CONNECTS CHRONIC PANCREATITIS AND PANCREATIC CANCER:</u>

**PMCID: PMC8124541 PMID: 34067040**

**Pancreatic fibrosis is caused by the excessive deposits of extracellular matrix (ECM) and collagen fibers during repeated necrosis to repair damaged pancreatic tissue. Pancreatic fibrosis is frequently present in chronic pancreatitis (CP) and pancreatic cancer (PC). Clinically, pancreatic fibrosis is a pathological feature of pancreatitis and pancreatic cancer. However, many new studies have found that pancreatic fibrosis is involved in the transformation from pancreatitis to pancreatic cancer. Thus, the role of fibrosis in the crosstalk between pancreatitis and pancreatic cancer is critical and still elusive; therefore, it deserves more attention. Here, we review the development of pancreatic fibrosis in inflammation and cancer, and we discuss the therapeutic strategies for alleviating pancreatic fibrosis. We further propose that cellular stress response might be a key driver that links fibrosis to cancer initiation and progression. Therefore, targeting stress proteins, such as nuclear protein 1 (NUPR1), could be an interesting strategy for pancreatic fibrosis and PC treatment.**

**<u>MEDICAL AND SCIENTIFIC BASIS LINKING CHRONIC PANCREATITIS WITH PANCREATIC CANCER</u>**

**A substantial and well-documented body of peer-reviewed literature establishes that chronic pancreatitis (CP) is an important risk factor for pancreatic ductal adenocarcinoma (PDAC). Multiple systematic reviews and meta-analyses demonstrate that patients with CP have markedly higher PDAC incidence than the general population, with the greatest excess risk observed in the first 1–5 years after CP diagnosis and a persistently elevated risk on longer follow-up. Hereditary forms of pancreatitis (e.g., PRSS1-related) confer especially high lifetime PDAC risk and are routinely identified as indications for targeted surveillance. Mechanistic and molecular studies provide biologic plausibility for causation: chronic pancreatic inflammation promotes acinar-to-ductal metaplasia, formation of PanIN precursor lesions, and accelerates KRAS-driven oncogenesis in an altered stromal microenvironment. International expert guidance recognizes CP as a risk marker and recommends surveillance in clearly defined high-risk subgroups; recent surveillance cohort data indicate earlier detection and potential outcome benefits when high-risk patients are monitored. Taken together, the**

epidemiologic magnitude of association, the temporality of risk, hereditary-risk amplification, and the coherent mechanistic pathway satisfy the threshold for medical plausibility and support pleading that the plaintiff's chronic pancreatitis materially increased his risk of pancreatic malignancy.

## V. LEGAL & REGULATORY VIOLATIONS:

21. Defendant violated 21 C.F.R. § 312.50 by failing to:
    a. Timely report adverse events to the FDA;
    b. Amend clinical trial protocols to address emerging risks;
    c. Implement enhanced monitoring for vulnerable disabled participants.

22. Defendant breached ethical standards established by the Belmont Report and the Declaration of Helsinki by prioritizing corporate objectives over participant safety.

## II. VIOLATIONS OF FEDERAL REGULATIONS:

1. Defendant's conduct allegedly violated federal clinical-trial protections under Title 21 C.F.R. §§ 50, 56, and 312, including:
    a. §50.20 – Informed Consent: failure to disclose material risks;
    b. §50.25 – Elements of Consent: omission of foreseeable combined-drug risks;
    c. §312.50 – Sponsor Responsibilities: insufficient monitoring and participant protection;
    d. §312.56 – Review of Investigations: continuing the trial despite unreasonable risk;
    e. §312.64 – Investigator Reports: failure to timely report serious adverse events.

These alleged violations constitute negligence per se, as the cited regulations exist to prevent the type of harm suffered by Plaintiff:

1. **LEGAL CAUSATION (PROXIMATE CAUSE / FORSEEABILITY**
   - It was foreseeable that use of a GLP-1 agonist might cause pancreatic enzyme elevation or inflammation, which could develop into chronic pancreatitis and possibly fibrosis or cancer. Defendant either knew, should have known, or had scientific literature and pharmacovigilance data sufficient to put it on notice of these risks (Exhibit A).
   - The injury (chronic pancreatitis) is not speculative but has already manifested, with substantial risk of further harm (pancreatic cancer).

## VI. LEGAL PRECEDENTS:

1. **In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation, MDL 3094 (E.D. Pa., 2024)**
   - Plaintiffs in the MDL allege that manufacturers (including Lilly) failed to adequately warn about gastrointestinal injuries, including pancreatitis and necrotizing pancreatitis, caused by GLP-1 RAs. Enjuris+3CaseMine+3Casetext+3
   - The court has recognized that the alleged injuries include "necrotizing pancreatitis" among others, and that defendants "were on notice" of a causal association but failed in their duty to adequately warn. CaseMine
2. **Zyprexa Products Liability Litigation (E.D.N.Y., 04-MD-1596, Dixon v. Eli Lilly)**
   - In *In re Zyprexa Products Liability Litigation*, Plaintiff alleged that Zyprexa caused diabetes and pancreatitis, and that Lilly failed to warn of those dangers. Summary judgment motions addressed duty to warn claims in that context. Casetext
3. **Drug-Induced Pancreatitis Literature**
   - The French pharmacovigilance study found a strong association between incretin-based drugs and pancreatitis (e.g. GLP-1 analogs) with high reporting odds ratios. PubMed
   - Case-control studies such as the Berlin surveillance study further document risk from various drugs after excluding other etiologies. PubMed

## LEGAL STANDARDS & ARGUMENT:

Plaintiff brings this action against Defendant - Eli Lilly and Company for severe and irreparable bodily & physical harm resulting from exposure to their investigational drug ORFORGLIPRON, a GLP-1 receptor agonist administered during Eli Lilly's clinical trial. As a direct consequence of participation in said clinical trial, Plaintiff developed chronic pancreatitis, a serious and progressive medical condition that substantially increases the future risk of pancreatic fibrosis which leads to pancreatic cancer. Medical literature confirms that pancreatic cancer is among the most lethal malignancies, with an average survival rate of approximately ten percent (10%), and is often detected only at an advanced stage, resulting in significant and unrelenting pain within a five-year timeframe.

Given these medical established facts, Plaintiff lives with the ongoing and well-founded fear of developing a terminal illness (Pancreatic Cancer) directly attributable to Defendant's investigational drug - ORFORGLIPRON. The psychological and physical burden imposed by this foreseeable outcome constitutes a grave and continuing injury warranting the full measure of compensatory and punitive damages sought herein.

## VII. APPLICABLE STATE OF INDIANA LAW:

1. Indiana's Product Liability Act (IPLA), Ind. Code § 34-20-2-1 et seq., provides the statutory framework for product liability claims in Indiana and governs claims alleging manufacturing defect, design defect, and failure to warn. Under the IPLA, claims alleging design defects and failure to warn are evaluated under a negligence standard (i.e., whether the manufacturer exercised reasonable care in design or in providing warnings), while strict liability is limited by statute principally to manufacturing defect theories. See Ind. Code § 34-20-2-1 et seq.; Ind. Code § 34-20-2-2; Ind. Code § 34-20-4-2. <u>Justia Law+1</u>

2. Indiana courts have long recognized that pharmaceutical manufacturers owe a duty to provide adequate warnings concerning foreseeable risks of prescribed drugs and that the adequacy of warnings is a question for the trier of fact in many cases. See, e.g., Ortho Pharmaceutical Corp. v. Chapman, 388 N.E.2d 541 (Ind. Ct. App. 1979) (holding failure to warn can render a product unreasonably dangerous and that adequacy of warnings is for the factfinder). <u>Justia Law</u>

3. The Indiana Supreme Court has held that misuse and other statutory defenses are available and may be dispositive if proved, but liability for inadequate warnings or design defects remains viable under the IPLA when the manufacturer fails to exercise reasonable care. See Campbell Hausfeld/Scott Fetzer Co. v. Johnson, No. 18S-CT-548 (Ind. 2018). <u>Justia Law</u>

4. The United States Supreme Court has held that state law failure-to-warn claims against pharmaceutical manufacturers are not necessarily preempted by federal law (FDA approval), and that manufacturers retain responsibility for the content of their warnings. See Wyeth v. Levine, 555 U.S. 555 (2009). Wyeth controls the principle that state-law failure-to-warn claims can proceed even where labeling has been subject to FDA review. <u>Justia Law</u>.

## FUTURE ADVERSE IMPACT OF PLAINTIFF'S NEW CHRONIC MEDICAL CONDITION (EXHIBIT A):

1. <u>PRE-EXISTING HEALTH STATUS: To reiterate,</u> Plaintiff had no prior diagnosis of any pancreatic or related medical condition before participating in Eli Lilly's clinical trial involving ORFORGLIPRON.

2. <u>SEVERITY OF INJURY:</u> Plaintiff's markedly elevated levels of lipase and amylase - pancreas enzyme levels unequivocally demonstrate a significant pancreatic injury. This is not a minor or transient side effect

but a serious medical condition that can progress to chronic disease <u>(chronic pancreatitis confirmed).</u>

3. <u>RISK OF PROGRESSION TO PANCREATIC CANCER:</u> Drug-induced pancreatitis is a recognized precursor to chronic pancreatitis, which in turn can lead to fibrosis and significantly increase the risk of pancreatic cancer. Eli Lilly, as the trial sponsor, had a duty to fully assess and disclose this risk to participants.

4. <u>ESTABLISHED RISKS FROM GLP-1 RECEPTOR AGENTS:</u> Medical literature, including studies on GLP-1 receptor agonists such as ORFORGLIPRON, confirms the heightened risk of chronic pancreatitis. Therefore, the Plaintiff's current condition is a foreseeable and scientifically supported consequence of trial participation.

5. <u>ONGOING MEDICAL RISK:</u> Plaintiff now suffers from chronic pancreatitis (ICD K86.1), causing current pain, functional impairment, and quality-of-life disruption. Moreover, this condition places the Plaintiff at significantly elevated risk for pancreatic cancer, a malignancy with less than a 10% five-year survival rate.

6. <u>SCIENTIFIC SUPPORT:</u> Contemporary research, including a 2025 study in *Molecular Cancer*, demonstrates that disruptions in pancreatic cellular biology accelerate disease progression and metastasis, highlighting the plausibility of severe future adverse outcomes.

7. <u>IMPLICATIONS FOR LIABILITY:</u> The serious, ongoing, and potentially life-threatening nature of Plaintiff's condition underscores Eli Lilly's responsibility for monitoring, warning, and mitigating these risks. Failure to do so constitutes a breach of the duty of care owed to clinical trial participants.

## VI. SYSTEMIC PATTERN / CORPORATE MISCONDUCT:

23. Eli Lilly has a record of business-driven clinical trial decisions, including abrupt terminations for "strategic reasons" without full transparency to participants. Plaintiff was a victim of this unethical conduct during the Defendant's LEPODISIRAN clinical trial.

24. Defendant's pattern of unethical conduct demonstrates deliberate and systemic negligence and disregard for elderly and disabled participants.

## ELI LILLY'S PATTERN OF ONGOING GLP-1 MISCONDUCT AND PUBLIC LITIGATION (EXHIBIT A - RELATED MOUNJARO LAWSUITS):

25. 1.   Plaintiff avers that Defendant Eli Lilly and Company ("Eli Lilly") has exhibited a continuing and pervasive pattern of corporate misconduct related to its GLP-1 receptor agonist drug portfolio, including but not limited to Tirzepatide (marketed as Mounjaro) and other investigational agents with similar metabolic and endocrine mechanisms of action such as Orforglipron and Lepodisiran.

26. 2.   Upon information and belief, in or about 2024–2025, Eli Lilly became the subject of multiple national lawsuits alleging that the company failed to warn patients, physicians, and the public of known and foreseeable adverse effects associated with the use of its GLP-1 drug Mounjaro, including severe gastrointestinal paralysis (gastroparesis), pancreatitis, ileus, and kidney injury.

27. 3.   According to recent public litigation reports and federal filings, these Mounjaro cases were consolidated under multidistrict litigation (MDL No. 3094) in the Eastern District of Pennsylvania as of September 2025, encompassing claims by thousands of affected patients. The central allegation across these cases is that Eli Lilly failed to provide adequate warnings and continued to promote the drug while in possession of evidence demonstrating serious and foreseeable organ toxicity.

28.4.   The same time during which Eli Lilly faced escalating public and governmental scrutiny regarding its failure to warn of GLP-1–related risks correspond directly with Plaintiff's participation in two Eli Lilly–sponsored clinical trials involving the investigational drugs Orforglipron and Lepodisiran between October 2024 and August 2025.

29.5.   Eli Lilly's corporate knowledge of systemic organ risks—including hepatic, renal, pancreatic, and gastrointestinal complications—was not only foreseeable but actively documented within its existing Mounjaro litigation, internal safety analyses, and subsequent FDA-mandated label modifications. Nevertheless, Defendant continued to conduct the Orforglipron and Lepodisiran trials without disclosing comparable warnings to participants or implementing enhanced safety monitoring.

30.6.   In September 2025, the Texas Attorney General filed an independent civil action against Eli Lilly alleging violations of the Texas Medicaid Fraud Prevention Act arising from an illegal kickback scheme related to Mounjaro's commercial promotion. This contemporaneous governmental action further illustrates a corporate pattern of deliberate concealment, reckless indifference, and disregard for lawful and ethical obligations in the administration, testing, and marketing of GLP-1 class drugs.

31.7.   Plaintiff contends that the Defendant's conduct, as evidenced by its pattern of failures in the Mounjaro litigation and related governmental enforcement actions, reflects a broader systemic failure to uphold the duty of care owed to trial participants and the consuming public. The repetition of materially similar misconduct across multiple GLP-1 agents demonstrates that Defendant's omissions in the present matter were neither isolated nor inadvertent but were instead the product of willful and reckless disregard for participant safety.

32.8.   Accordingly, Plaintiff asserts that Defendant Eli Lilly's actions constitute gross negligence and willful misconduct, thereby justifying an award of compensatory and punitive damages sufficient to deter future

similar conduct. Plaintiff further reserves the right to seek judicial notice of public filings and reports pertaining to the Mounjaro multidistrict litigation and related enforcement actions as corroborative evidence of Defendant's pattern of negligence and failure to warn.

## VII. CAUSES OF ACTION

1. **NEGLIGENCE:** Breach of duty to protect Plaintiff from foreseeable injury.
2. **FAILURE TO WARN:** Omission of critical risk information regarding trial participation.
3. **STRICT LIABILITY:** – Defective Design and Testing. In addition, unsafe concurrent use rendered drugs unreasonably dangerous.
4. **NEGLIGENT MISREPRESENTATION:** False assurances about clinical trial safety and monitoring.
5. **NEGLIGENCE PER SE:** Blatant violations of 21 C.F.R. §§ 50 and 312.
6. **BREACH OF FIDUCIARY DUTY AND ETHICAL OBLIGATIONS:** Abject failure to protect elderly disabled participants nationwide.
7. **GROSS NEGLIGENCE/ RECKLESS ENDANGERMENT:** Conscious disregard for known health risks and federal compliance duties.

## VIII. STATEMENT OF CLAIM

Against the above background, Plaintiff, Earl James Gobin, a 69-year-old disabled senior citizen, respectfully brings this civil action against Defendant Eli Lilly and Company for serious long term and chronic personal and bodily injuries suffered because of participation in the ORFORGLIPRON clinical trial sponsored by Defendant. As such, Plaintiff seeks compensatory and punitive damages totaling **Five Million Dollars (USD $5,000,000.00).**

This case arises from the Defendant's obvious negligence, failure to warn, breach of duty, and reckless disregard for Plaintiff's safety during two concurrent clinical investigational drug trials sponsored by Eli Lilly between September 2024 and July 2025.

Plaintiff therefore seeks compensatory and punitive damages based on Defendant's negligent, reckless, and grossly negligent unethical conduct, which directly caused severe medical complications and permanent bodily harm, chronic pancreatitis, kidney stones, adrenal dysfunction, prostate enlargement, calcification of vital organs, and cyst formation.

## I. FACTUAL BACKGROUND (SUMMARY)

1. Plaintiff participated in two Eli Lilly–sponsored clinical trials: LEPODISIRAN (for reduction of lipoprotein(a) - treatment of cardiovascular disease) and ORFORGLIPRON (for treatment of obesity and type 2 diabetes).

2. At enrollment, Plaintiff's medical records reflected normal and stable liver and pancreatic enzymes, renal, and metabolic values.

3. Plaintiff had normal pancreas, liver enzyme levels and no history of pancreatitis or organ calcification. During the trials, Plaintiff experienced escalating symptoms and was diagnosed at end of the ORFORGLIPRON trial with:

   a. Chronic pancreatitis (K86.1).

   b. Kidney stones and adrenal dysfunction.

   c. Prostate enlargement and multiple cyst formations.

   d. Calcification of the spleen, pancreas, and heart.

   e. Laboratory results allegedly showed amylase and lipase levels three times normal limits, yet investigators continued dosing without intervention or re-consent.

   f. Plaintiff asserts these conditions have caused permanent abdominal pain, emotional trauma, and continuing financial burden for treatment and long-term care.

g. Plaintiff voluntarily participated in two clinical trials sponsored by Defendant beginning in September 2024. In this vein, Plaintiff completed the ORFORGLIPRON clinical trial On July 31st, 2025 (The official end date). However, Plaintiff was unilaterally kicked out of the LEPODISIRAN clinical trial facilitated by Emory Hospital in an abrupt and arbitrary fashion. This specific trial was supposed to last five years from inception. However, Plaintiff was removed by Emory Hospital after one year of participation.

h. During the clinical trial, Plaintiff developed multiple severe medical conditions, including chronic pancreatitis, kidney stones, adrenal dysfunction, prostate enlargement, and calcification of the spleen, pancreas, and heart, as well as various cyst formation.

i. Plaintiff's medical records, lab results, and expert reports substantiate that these injuries were caused by or exacerbated by Defendant's investigational drug - ORFORGLIPRON.

j. Defendant failed to provide adequate warnings regarding known or foreseeable risks, neglected proper monitoring protocols, and displayed reckless disregard for Plaintiff's safety.

Against the above background, Plaintiff brings this claim against Eli Lilly for irreparable bodily and physical injury suffered as Defendant owed duties of care and warning, breached those duties, and this breach was a proximate cause of severe and ongoing physical injury.

**DAMAGES SOUGHT:**

33. PLAINTIFF HAS SUFFERED:
   - Chronic pain and permanent pancreatic injury;
   - Medical expenses for diagnostic tests, treatment, and monitoring;
   - Loss of enjoyment of life and emotional distress;
   - Economic loss and reduced life expectancy.

34. Total damages sought: **$5,000,000.00 (compensatory and punitive).**

## IX. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this honorable district court:**

1. Enter judgment against Defendant on all counts documented therein.

2. Award compensatory damages for permanent physical and bodily injuries, pain, emotional trauma and part time consulting income; Total Compensatory Damages Sought Equals USD-$2,500,000.00.

3. Award punitive damages for Defendant's willful and reckless conduct; Total Punitive Damages Sought Equals: USD-$2,500,000.00.

4. Grant declaratory and injunctive relief requiring Defendant to improve clinical trial safety protocols for the benefit of vulnerable citizens nationwide who plan to participate in the Defendant's future clinical trials; and

5. Award any other relief this honorable district court deems fair, equitable just and proper.

## X. CONCLUSION:

This case stands as a profound reminder that clinical research must never sacrifice human dignity, safety, or ethics for corporate profits, convenience or expedience. Plaintiff Earl James Gobin—a 69-year-old disabled senior, medically fragile and cognitively impaired—entrusted his health and life to Eli Lilly and Company under the reasonable belief that he would be monitored, protected, and treated with the highest standard of care required under federal law and ethical doctrine.

Instead, Defendant obviously chose profit-driven haste over patient safety, silence over transparency, and self-preservation over moral responsibility. Despite Plaintiff's repeated reports of worsening abdominal pain, organ

calcification, and biochemical abnormalities, Defendant failed to act with the urgency and care expected of any responsible sponsor conducting human research. Their indifference and delay violated 21 C.F.R. § 312.50, the Belmont Report's principle of beneficence, and the Declaration of Helsinki's global standard for the ethical treatment of human subjects.

The Plaintiff's suffering was not an isolated accident but the foreseeable and preventable outcome of systemic negligence—rooted in Eli Lilly's disregard for protocol compliance, informed consent, and the safety of vulnerable disabled participants. Each delayed acknowledgment, each unreturned communication, and each overlooked symptom compounded the damage, both physical and psychological. The resulting pain, vital organ dysfunction, and emotional trauma have all profoundly diminished Plaintiff's quality of life and permanently altered his health trajectory.

The law provides no exemption for negligence concealed under the banner of scientific advancement. Nor should age, disability, or cognitive impairment disqualify a person from the same protections afforded to every participant in clinical research. Defendant's conduct was not merely negligent—it was reckless, unethical, and unconscionable. It reflects a broader pattern that must be exposed, adjudicated, and corrected, lest others suffer similar harm under the same corporate indifference.

Plaintiff therefore implores this honorable district court to exercise its full authority:

- To hold Defendant 100% accountable under the doctrines of medical negligence, strict liability, breach of contract, and failure to warn.

- To declare that Defendant's conduct both violated federal and ethical research standards.

- To compensate Plaintiff fully and fairly for the extensive medical, economic, and emotional harm suffered; and

- **To impose punitive damages sufficient to deter future unethical misconduct and affirm that the rights of human research subjects remain sacred and inviolable.**

- **A final judgement in the Plaintiff's favor will serve to protect vulnerable clinical trial future participants nationwide - elder disabled community.**

**Justice in this matter will not undo the harm already endured, but it will affirm that truth, accountability, and human welfare prevail even against the most powerful institutions in our nation. Plaintiff asks this honorable district court to make that affirmation clear—through judgment, through remedy, and through the restoration of trust in the very system designed to protect participants like him.**

**Respectfully submitted,**

**Earl James Gobin, Pro Se Plaintiff**
**4386 Cedar Wood Dr SW**
**Lilburn, GA 30047**

**Email: eagobin001@gmail.com**

**Mobile: (678) 849-2576**